UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW SHEPHERD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-00167-SEB-DML |
| ASI, LIMITED, ) | |
| WINTON DEVELOPMENT, LLC, ) | |
| S&S RACING, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER CERTIFYING CLASS ACTION

This cause comes before the Court on Plaintiff's Amended Motion for Class Certification [Docket No. 56], filed on May 6, 2013, pursuant to Federal Rules of Civil Procedure 23. For the reasons set forth below, Plaintiff's motion is GRANTED.

### Factual and Legal Background

**1. Facts**

Defendant ASI, Limited ("ASI") was a window manufacturing company which maintained its manufacturing facility in Whitestown, Indiana. Second Am. Compl. ¶ 4.[1] Co-Defendants S & S Racing, LLC ("S & S") and Winton Development, LLC ("Winton") were Indiana-based limited liability companies that also maintained headquarters at the same Whitestown facility. ¶¶ 5–6. Plaintiff Andrew Shepherd was an ASI employee who worked at the Whitestown facility. ¶ 7.

---

[1] Henceforth citations only to paragraph number refer to the Second Amended Complaint [Docket No. 41], unless noted otherwise.

1

On December 22, 2011, ASI shut down the Whitestown facility and terminated all of its employees, including Plaintiff Andrew Shepherd, without cause. *See* ¶¶ 8–9; Defs.' Resp. 2. None of the employees were provided advance notice of the plant closing or the lay-offs. ¶ 13. Plaintiff's current estimate is that 273 employees were affected by the terminations, *see* Docket No. 56 Ex. A. Although Defendants do not dispute that terminations without notice occurred, they do not agree to Plaintiff's estimate of the number of employees affected and the extent of the financial harm they incurred. *See* Defs.' Resp. 2–4. The terminated employees fell into several categories: union members, hourly employees, salaried employees, on-site employees, and a number of workers who, though directed from the Whitestown facility, did not report to that location for work. *Id.*

Upon the closing of ASI's Whitestown plant and the termination of all its employees, PNC Bank sold the company's assets. A number of the principal assets, including the manufacturing facility, were bought by Ohio Farmers' Insurance Company. Ohio Farmers' subsequently offered to rehire some, but not all, of the laid off ASI employees to positions at the reconstituted plant. Pl.'s Reply 5–6.

**2. Applicable Law**

Plaintiff's class action claim arises under the federal Worker Adjustment Retraining and Notification (WARN) Act of 1988, 29 U.S.C. §§ 2101–2109. Enacted as a response to the extensive economic dislocations associated with the downsizing of United States manufacturing employment in the 1970s and 1980s—dislocations which have spiked again in the aftermath of the recent recession and financial crisis—the WARN Act allows workers "to adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow [them] to successfully compete in the job market." *See* 20 C.F.R. §

639.1(a) (1998); *Hotel Emps. and Restaurant Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999). The Act's protections apply to the employees of any employer with 100 or more full-time workers and mandate that "an employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to all affected employees and to state authorities. 29 U.S.C. § 2102(a). A "plant closing" under the Act occurs if there is a permanent or temporary shutdown of a single site of employment that results in employment loss for 50 or more employees during any 30-day period, 29 U.S.C. § 2101(a)(2); even if a plant does not close, a "mass layoff" triggering the Act's protections occurs when at least 50 employees—constituting at least one-third of the work force—suffer employment loss. 29 U.S.C. § 2101(a)(3). Other than through outright termination, a worker suffers "employment loss" if she is laid off for more than six months or is given a reduction of work hours of at least 50% in any six-month period. 29 U.S.C. § 2101(a)(6).

If an employer violates the WARN Act's notice requirements, its employees are entitled to back pay and benefits for each day by which the notice given fell short of the required 60 days—in addition to civil fines levied by local government units. 29 U.S.C. § 2104(a)(1)–(3). Certain exceptions to the notice requirements apply. Most notably, an employer may be excused from giving notice if, "as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown," and if the employer reasonably believed that giving notice would imperil that effort. The Act also provides an "unforeseeable business circumstances" exception, which excuses notice where the shutdown or layoffs are caused by a sudden occurrence outside the employer's control. 29 U.S.C. § 2102(b)(2)(A).[2] Aggrieved employees

---

[2] Notice may also be excused if the closing or layoffs are forced by a natural disaster. 29 U.S.C. § 2102(b)(2)(B).

3

may enforce the provisions of the WARN Act in any federal district court where the closing or layoffs occurred or where the employer transacts business. 29 U.S.C. § 2104(a)(5).

Plaintiff has brought suit pursuant to the WARN Act, on behalf of himself and a proposed class of similarly situated employees, seeking recovery for

> an amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, for sixty (60) working days following the member employee's termination, all determined in accordance with the WARN Act.

Am. Compl. 6–7.

## Legal Analysis

### I. The Rule 23 Standard

Federal Rules of Civil Procedure 23 allows for the aggregation of claims into class action suits when the litigation of a group of potential plaintiffs' claims *en masse* is a superior method of enforcing the rights of individual class members. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1128 n.33 (7th Cir. 1979). The Supreme Court has recognized that "class actions serve an important function in our system of justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)—namely, to "vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980). Because of their breadth and reach, however, class actions also present the potential for abuse, and the Federal Rules accordingly vest district courts with tight control over class actions and the discretion to enter appropriate orders governing the conduct of counsel and parties. *See* Fed. R. Civ. Pro. 23; *Gulf Oil*, 452 U.S. at 100.

Rule 23 sets forth four threshold requirements for certification of a class action. A district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a). In addition, the class action vehicle is appropriate only if at least one of the following factors are present: there is a risk that prosecuting the matter in separate actions will create incompatible standards of conduct binding the defendant; adjudication of separate individual claims would prejudice the interests of potential parties not joined to the suit; the defendant has acted or refused to act on grounds that apply generally to the putative class; or the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b).

As several courts have previously noted, "[t]he WARN Act seems particularly amenable to class litigation." *Moreno v. DFG Foods, LLC*, 2003 WL 21183903, at *6 (N.D. Ill. May 21, 2003) (citing *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)). By its terms, the Act applies only to firms employing at least 100 people—a number almost always sufficient to satisfy Rule 23's numerosity requirement. *See, e.g.*, *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 612 (E.D.N.Y. 1991). Moreover, actions under the Act may be well suited to class resolution on policy grounds, because they will almost always involve large numbers of similarly-situated plaintiffs whose claims may be small when taken separately but significant in the aggregate.

## II. Appropriateness of Plaintiff's proposed class

### A. The requirement of an identifiable and ascertainable class

Plaintiff moves that we certify the following class:

All individuals who were nominally employed by ASI, Limited ("ASI"), who worked at or reported to ASI's facility located at Whitestown, Indiana (the "Facility"), and who were terminated and/or laid off without cause on their part from their employment on or within thirty days of December 22, 2011, or thereafter, as part of, or as the reasonably expected consequence of, the mass layoff or plant closing at the Facility that occurred on or about December 22, 2011, as defined by the WARN Act, who do not file a timely request to opt out of the class.

Docket No. 56, Ex. B. As previously noted, Plaintiff has submitted a list of 273 employees that he asserts qualify for class membership under his proposed definition.[3] Docket No. 56 Ex. A. Defendants contend that a large portion of these 273 employees are not eligible for relief under the WARN Act—because they were part-time employees, they worked off-site rather than at the Whitestown facility, they had been hired within six months at the time the plant closed, or they were subsequently re-hired. *See* Defs.' Resp. 2–4. Defendants do not appear to dispute that the employees listed by Plaintiff were "terminated and/or laid off without cause on their part from their employment on or within thirty days of December 22, 2011," Docket No. 56 Ex. B; whether all of them were statutorily eligible workers who suffered "employment loss" as particularly defined by the WARN Act, however, is a different question. By Defendants' estimates, there are only 21 employees who were eligible for WARN Act notice, absent any successful defense on the merits. Defs.' Resp. 6.

Although Rule 23 sets forth explicit threshold requirements for class certification, it also contains an implicit antecedent requirement: that an identifiable and ascertainable class must exist. *See Elliott v. ITT Corp.*, 150 F.R.D. 569, 573–574 (N.D. Ill. 1992); *see also Wolph v. Acer*

---

[3] Although Plaintiff in his briefs characterizes the list as being composed of 274 employees—273 individuals in addition to Plaintiff Andrew Shepherd himself—his submitted list of 273 includes Shepherd's name.

*Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). Among the responsibilities of district courts in deciding motions for class certification, then, is to ensure that the proposed class definition is not overbroad—that it does not sweep in a large number of individuals who did not suffer any actionable wrong at the hands of the defendant. *See Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 677–678 (7th Cir. 2009). Although class certification motions are generally not the appropriate vehicle for addressing the merits of the plaintiff's claim, it is sometimes necessary for a court to reach a conclusion on the validity of any substantive propositions that are embedded in a plaintiff's proposed class definition. *See generally Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–2552 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–677 (7th Cir. 2001). "[I]f, for example, the plaintiff alleged that the class had 10,000 members, making it too numerous to allow joinder, while the defendant insisted that the class contained only 10 members . . . [a] judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would . . . resolve the disputes before deciding whether to certify the class." *Szabo*, 249 F.3d at 676. While we are not here faced with such an extreme discrepancy between Plaintiff's and Defendants' estimates of the putative class's size, it is nonetheless appropriate to address briefly Defendants' objections.

Defendants' first objection to Plaintiff's class definition is that it includes part-time employees who, they contend, are not covered under the WARN Act. Defs.' Resp. 4 (citing 29 U.S.C. § 2101(a)). The Act defines a "part-time employee" as one who works for an average of fewer than 20 hours per week or who has been employed for fewer than six of the twelve months preceding the date on which notice is required. 29 U.S.C. § 2101(a)(8). Defendants argue that all ASI employees hired after April 21, 2011 are part-time employees, and thus inherently ineligible

under the Act.[4] Defs.' Resp. 5. As Plaintiff has noted in reply, however, the WARN Act does not exclude part-time employees from relief. Although its number of full-time employees is relevant to establishing whether a defendant is large enough to fall under the WARN Act *at the outset*, Defendants have provided no support for their contention that recovery under the Act is limited to full-time employees. Indeed, the Act's recovery provision by its terms applies to all "employees" who suffer employment loss, with no exclusion. *See* 29 U.S.C. § 2104. It therefore stands to reason that "the exclusion of part-time employees in some of the criteria under that WARN Act cannot be interpreted as excluding part-time employees as experiencing an employment loss when employment loss is specifically defined and such definition does not exclude part-time employees." *See Roquet v. Arthur Anderson LLP*, 19 IER Cases 670, 2002 WL 1900768, at *3 (N.D. Ill. Aug. 16, 2002). We can thus conclude that the fact that the proposed class may include "part-time" workers as defined under the WARN Act serves as no impediment to its certification.

Second, Defendants argue that a group of 60 union employees is not eligible under the WARN Act because they worked offsite and did not "work at or report to the ASI facility" in Whitestown. Defs.' Resp. 4. The WARN Act is triggered only when a plant closing or mass layoff occurs at a "single site of employment," and its remedies are available only to employees who worked at that single site. *See* 29 U.S.C. § 2102(a)(2). Federal regulations further clarify, however, that offsite workers may be counted as employees at a single site under certain circumstances:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the

---

[4] They arrive at this date by counting backwards six months from the alleged notice deadline of October 23, 2011. Employees hired after April 21 would be "part-time" at the time of their termination because they had not worked for ASI for at least 6 of the previous 12 months. Defs.' Resp. 5.

>single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i).

In support of their position, Defendants cite a Ninth Circuit case, *Bader v. N. Line Layers, Inc.*, 503 F.3d 813 (9th Cir. 2007), but their reliance on it is misplaced. In *Bader*, the court determined that a construction company's headquarters in Montana did not qualify as a "single site of employment" where the employees in question were "construction workers and project managers at construction sites in Arizona, California, Colorado, Nevada, North Carolina, Texas, Utah, Vermont, and Wyoming." *Bader*, 503 F.3d at 815. The court based its holding on the disparate and far-flung nature of the construction workers' employment—and the fact that none considered the site in question to be their "home base" in a practical sense. *Id.* at 819. Here, by contrast, Plaintiff points to several factors which tend to show that the Whitestown facility qualifies as a single site of employment: it was the only facility of any kind operated by ASI, the employees' union representatives were based there and negotiated collective-bargaining agreements there, the employees' payroll was processed there, and the employees participated in ASI's unitary 401(k) plan. *See* Pl.'s Reply 8 (citing Docket No. 63 Ex. B, Depositions of Kenneth Smith and Deborah Molson). Other than pointing to a factually distinguishable case, Defendants have provided no support for the notion that the 60 union employees listed on Plaintiff's roster of potential class members necessarily lack standing under the WARN Act.

Finally, Defendants object that the proposed class, as currently defined, includes employees who were rehired by ASI shortly after they were terminated on December 22, 2011—employees who, they contend, would thus not have suffered "employment loss" under the WARN Act. Defs.' Resp. 4. Here, again, Defendants have provided no relevant support for their

9

argument.[5] As the Seventh Circuit has explained, the WARN Act may apply to temporary as well as permanent job losses, and the statute's language is to be taken as written. *See Phason v. Meridian Rail Corp.*, 479 F.3d 527, 529 (7th Cir. 2007). The statute defines a "plant closing" as any "permanent *or temporary*" shutdown that causes employment loss; it further defines "employment loss" as *any* termination—other than a voluntary one, an employee retirement, or for-cause dismissal—or any layoff exceeding six months. *See* 29 U.S.C. §§ 2102(a)(2), 2101(a)(6) (emphasis added). In *Phason v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007), the Seventh Circuit held that employees terminated by one company and hired a mere eight days later by the company's purchaser nevertheless suffered an "employment loss." 479 F.3d at 529. Here, we face a similar situation. Even if a number of ASI employees were eventually re-hired by ASI's successor in interest, these workers are deemed to have suffered an "employment loss" under the statute, and would thus be entitled to recovery if Defendants are ultimately unable to establish a defense for their failure to provide them with notice.

Defendants have not succeeded in identifying any defects in Plaintiff's proposed definition that cast doubt on the existence of an ascertainable class or present concerns that it includes a broad swath of members who fall outside the protections of the WARN Act. Keeping in mind that we retain the discretion to alter or amend class certifications at any point before final adjudication on the merits, *see* Fed. R. Civ. Pro. 23(c)(1)(C); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 n.21 (3d Cir. 2008)—and without excluding the possibility, of course, that some members of Plaintiff's submitted roster of 273 employees may be disqualified

---

[5] The case they do cite, *Kephart v. Data Sys. Int'l, Inc.*, 243 F. Supp. 2d 1205 (D. Kan. 2003), deals with the issue of whether employees who are *already laid off* should count towards the employer's worker total to determine whether a *subsequent* plant closure or mass layoff affects enough workers to trigger the WARN Act. It does not deal with the question presented here—whether a worker who is terminated but then rehired a short time later is entitled to 60 day notice under the WARN Act before the termination occurs.

from relief—we conclude that Defendants' wholesale objections to Plaintiff's class definition are unavailing.

**B. The requirements of Rule 23(a)**

Having determined that Plaintiff's proposed class describes an identifiable group of employees who have a colorable claim to relief, we next address whether Plaintiff has satisfied the four threshold criteria for class certification provided by Rule 23(a).

**1. Numerosity – Rule 23(a)(1)**

To be eligible for certification, a proposed class must be so numerous that joinder of all the members as plaintiffs would be impracticable. Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *A.M.T. v. Gargano*, 2010 WL 4860119, at *3 (S.D. Ind. Nov. 22, 2010) (citing *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002)); *see also Hubler Chevrolet, Inc. v. Gen. Motors Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000). Plaintiff has submitted that 273 people fall within his proposed definition. *See* Docket No. 56 Ex. A ("Amended Class Certification List").[6] A class of this size unquestionably fulfills the numerosity requirement.

In addition, the characteristics of this action are in accord with a key policy goal underpinning Rule 23(a)'s preference for classes with numerous members: providing for the aggregation of claims that would otherwise be too small to pursue. *See Moreno*, 2003 WL 21183903, at *6 (noting that "the ability of class members to initiate individual suits" is a proper consideration in determining whether joinder is impractical). In other words, the numerosity requirement seeks to limit class actions to those where, in the Supreme Court's words, "most of

---

[6] In his first motion to certify class, Plaintiff listed 233 employees as qualifying for relief. The additional names appear to represent employees whose records do not show a termination date of December 22, 2011, but did in fact lose their jobs when all positions at the facility were terminated and it was shut down. Defendant has not responded to the inclusion of these names, and we reserve resolution of any possible dispute over their WARN Act eligibility for our disposition on the merits. *See* Pl.'s Amended Motion for Class Certification 2 n.11.

11

the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Here, Plaintiff asserts that the average claim for each potential class member is less than $10,000, a sum which might not warrant the time and expense of litigation for many of the affected employees. *See* Docket No. 35 at 8. In this respect, at least, the employees' grievances against Defendants present precisely the type of claim the class action mechanism is designed to accommodate.

### 2. Commonality – Rule 23(a)(2)

Rule 23's commonality criterion requires that the issues raised by the complaint be "common to the class as a whole" and that they "turn on questions of law applicable in the same manner to each member of the class." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). The Supreme Court has recently injected more rigor into the commonality inquiry, clarifying that it does not suffice for a plaintiff merely to raise common "questions," since "any competently crafted class complaint" will do so. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis in original) (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, the commonality requirement is satisfied based on the allegation that Defendants "have engaged in standardized conduct towards members of the proposed class." *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). All former employees were terminated at the same time and in the same manner, and none received the 60-day notice to which they were allegedly

entitled under the WARN Act. *See Moreno*, 2003 WL 21183903, at *8. Since the claim arises from this "common nucleus of operative fact," the class action complaint here presents an opportunity to determine, at a stroke, whether Defendants' conduct violated their legal obligations towards all the employees terminated on December 22, 2011. *See Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). As Plaintiff has pointed out, the only major issue not shared in common by the potential class members is the rate of pay at which they would be compensated for the violation—a distinction that does not touch on the core question of whether Defendants violated the Act. *See Keele*, 149 F.3d at 594–595 (noting that some "factual variations among class members' grievances do not defeat a class action").

### 3. Typicality – Rule 23(a)(3)

The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claim of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). In other words, the named plaintiff must be fully representative of the class, possessing the same interest and suffering the same injury—in broad terms—as the other class members. *See Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (further citations omitted). A plaintiff's claims need not be identical to those of other class members, but a court will deny class certification when the variation in claims between potential class members "strikes at the heart of the respective causes of action." *Cf. Dieter v. Microsoft Corp.*, 436 F.3d 461, 466–467 (4th Cir. 2006) (disapproving class certification where the interests of large institutional antitrust plaintiffs differed from those of others).

The requirements of typicality and commonality under Rule 23 are similar, and they serve the same policy goals—determining whether the class action form is in the interests of

judicial economy, and further whether the "named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Gargano*, 2010 WL 4860119, at *5. Here, Plaintiff's interest in the litigation is aligned with that of the members of his proposed class; a finding that Defendants violated the WARN Act would redound to the benefit of all class members in proportion to their pre-existing pay and benefits expectations, and no individual sub-class has any discernible prospect of gaining comparative advantage over others based on our ultimate resolution of the central liability issue. *Compare Moreno*, 2003 WL 21183903, at *8 (finding typicality satisfied in a WARN Act case where the plaintiff had suffered termination in the same manner as all other employees) *with Muro*, 580 F.3d at 492 (finding typicality not satisfied when putative class victimized by credit card fraud had received different types of unsolicited cards and thus had potentially different litigation incentives). Because the incentives of Plaintiff and the class as a whole are aligned, this proposed class raises none of the fairness concerns embodied in the commonality and typicality requirements.

In *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), the United States Supreme Court reversed the Ninth Circuit's affirmance of a class certification for a nationwide group of female Wal-Mart employees who claimed that they had suffered gender discrimination at the company's hands. In an inquiry that necessarily overlapped with review of the merits of the employees' claim that the company engaged in a nationwide pattern or practice of discrimination, the Court stated: "Without some glue holding the alleged *reasons* for all those [allegedly discriminatory] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" 131 S. Ct. at 2552 (emphasis original). In other words, the plaintiffs in *Wal-

14

*Mart* had not succeeded in showing that, even if they did suffer discrimination, their experience was a fair microcosm of the discrimination suffered by a large group as the result of Wal-Mart's concerted conduct. The contrast with the case before us is instructive. Here, no inquiry into the merits of the underlying WARN Act claim is necessary in order to conclude that ASI issued the same unannounced terminations to all its employees on a single date—and that Plaintiff's legal grievance is therefore sufficiently similar to those of all the other employees who received the same terminations.

### 4. Fair and adequate representation – Rule 23(a)(4)

Our inquiry into the fairness and adequacy of representation afforded by a plaintiff as a potential class representative overlaps significantly with our examination of the "typicality" requirement; a plaintiff whose claim is typical of the proposed class can be assumed to be a fair representative of the class's interest. *See Estate of VanDam ex rel. Horizon Trust & Inv. Mgmt., N.A. v. Daniels*, 278 F.R.D. 415, 425 (S.D. Ind. 2011). A plaintiff can satisfy Rule 23(a)(4) in this respect by showing that he does not possess "interests antagonistic to the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (7th Cir. 1975). This portion of the Rule also directs us, however, to inquire into the adequacy of the plaintiff's counsel in representing the class's interests. *See Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986). A plaintiff must show that counsel is "qualified, experienced, and able to conduct vigorously the proposed litigation." *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 507 (S.D. Ind. 1999). Evidence that counsel has proved adequate as a class representative in the past is usually persuasive to this end, *see Evans v. Evans,* 818 F. Supp. 1215, 1220 (N.D. Ind. 1993), as is counsel's expertise at handling litigation in the substantive field in which the suit is brought. *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996).

As Plaintiff points out, and as we have previously noted, there is no evidence that Plaintiff possesses interests antagonistic to those of his potential fellow class members. The remedy he seeks is the customary one under the WARN Act—60 days' back pay and benefits; his interest in obtaining this compensation is aligned with those of the other terminated employees in obtaining that which is allegedly owed to them based on their own pre-existing expectations. *See* Docket No. 35 at 12. Moreover, Plaintiff has presented evidence that his proposed class counsel have successful experience both with class actions and with claims under the WARN Act. *See* Docket No. 35 at 13 (citing Miller Decl. ¶¶ 11–17). Defendants have made no objection to the appropriateness of counsel. Thus, we conclude that both Plaintiff and his chosen counsel are equipped to represent the interests of the proposed class fairly and adequately.

**C. The Requirements of Rule 23(b)**

In addition to the four threshold criteria of Rule 23(a), a proposed class must meet one of the additional four requirements set forth in Rule 23(b). Here, Plaintiff argues that the class satisfies Rule 23(b)(3), which requires a court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3). The Rule further provides that the factors pertinent to certification on these grounds include: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Id.*

We have no difficulty here in concluding that questions of law or fact common to class members predominate over questions affecting only individual members, for much the same reason as we have already discussed. The legal claim of each employee who was terminated without notice on December 22, 2011 is identical, and the circumstances of each member derive from "a common nucleus of operative fact" even if the dollar amounts attached to their claims will differ. *Schmitt v. United States*, 203 F.R.D. 387, 402 (S.D. Ind. 2001). "The fact that individual claims may ultimately be reviewed to apply the legal principles to individual class members" does not affect our conclusion, for all that Rule 23(b)(3) requires is "an essential common factual link between all class members and the defendant for which the law provides a remedy." *Id.* (quoting *Johns v. DeLeonardis*, 145 F.R.D. 480, 485 (N.D. Ill. 1992)). Such a "factual link" exists in abundance here.

Similarly, we can conclude that the disposition of these hundreds of potential claims through the class action mechanism is a fair and efficient use of the court's resources. Because of the identical nature of the claims, no class member has a discernible interest in individually controlling the prosecution of separate actions, and there is no evidence before us that any of the potential class members have actually initiated separate actions. *See* Docket No. 35 at 15. Further, because the individual claims involved are relatively small—averaging less than $10,000, *see* Docket No. 35 at 8—it serves the interests of judicial economy to concentrate the litigation in a single forum. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Finally, we do not anticipate that the prosecution of this class action will present especially grave logistical problems; Plaintiff claims to have identified the potential class members, and the acts involved all took place at one discrete location within the Southern District of Indiana. *See* Docket No. 35 at 15.

**Conclusion**

Defendants prefaced their response to Plaintiff's Motion to Certify Class by acknowledging that their objections may be better suited to the "forthcoming summary judgment filings" than briefings on the present motion. Defendants have the right idea, but the wrong arguments. True, none of the points they have raised thus far presents any obstacle to our certification of the class Plaintiff has proposed. Defendants' arguments scarcely fare better as objections on the merits, however. In order to defeat Plaintiff's WARN Act claim, Defendants must either point to a deficiency in the *prima facie* case for relief or establish their entitlement to one of the affirmative defenses provided under the Act. While they will surely have an opportunity to do so, our role at this stage is simply to weigh the fitness of Plaintiff's proposed class; we conclude that this action is well within the bounds contemplated under Rule 23.

Accordingly, we GRANT Plaintiff's Motion to Certify Class and CERTIFY the following class:

> All individuals who were nominally employed by ASI, Limited ("ASI"), who worked at or reported to ASI's facility located at Whitestown, Indiana (the "Facility"), and who were terminated and/or laid off without cause on their part from their employment on or within thirty days of December 22, 2011, or thereafter, as part of, or as the reasonably expected consequence of, the mass layoff or plant closing at the Facility that occurred on or about December 22, 2011, as defined by the WARN Act, who do not file a timely request to opt out of the class.

We hereby DESIGNATE Andrew Shepherd as the representative Plaintiff for the certified class and, pursuant to Federal Rules of Civil Procedure 23(g), DESIGNATE the law firms of Lankenau & Miller, LLP; the Gardner Firm, P.C.; and Fillenwarth, Dennerline, Groth & Towe, LLP as class counsel for the certified class.

Finally, we APPROVE the form and manner of Plaintiff's proposed Notice to the Class [Docket No. 56 Ex. B], noting that it fulfills the requirements of Rule 23(c)(2)(B) by clearly and

concisely setting forth: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims and issues, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a class judgment on members of the class under Rule 23(c)(3). The representative Plaintiff and counsel are hereby directed to provide this notice to every person encompassed by the proposed class definition. We endorse Plaintiff's intention to serve notice by first-class U.S. Mail, and direct Plaintiff and counsel to exert all reasonable efforts to locate putative class members in the event the initial attempt fails. Notice should be mailed so that all putative class members have at least 30 days from the date of the mailing to object to inclusion in the class.

Following the issuance of this notice, class counsel should file with the Court a status report along with a schedule of subsequent steps they intend to take in litigating this matter, preferably following a conference with Defendants' counsel. If a hearing or meeting is deemed desirable before the assigned Magistrate Judge, a request for such should be made to that judicial officer at the earliest time after the need arises.

IT IS SO ORDERED.

Date: _11/18/2013_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

Stuart J. Miller
LANKENAU & MILLER
sjm@lankmill.com

Mary E. Olsen
THE GARDNER FIRM, P.C.
molsen@thegardnerfirm.com

Michael Vance McCrary
THE GARDNER FIRM, P.C.
vmccrary@thegardnerfirm.com

David C. Tufts
THE GARDNER FIRM, PC
dtufts@thegardnerfirm.com

William Jake Tucker
TUCKER HESTER BAKER & KREBS LLC
wtucker@thbklaw.com

John K. McDavid
TUCKER HESTER BAKER KREBS LLC
jmcdavid@thbklaw.com